## STATEMENT OF FACTS

Your affiant, John M. Mocello, is a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI"), currently assigned to the Washington Field Office.  In my duties as a TFO, I investigate federal crimes, including violent crime and domestic terrorism.  Currently, I am tasked with investigating criminal activity in and around the United States Capitol grounds on January 6, 2021.  As a TFO, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of violations of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police ("USCP").  Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police.  Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.  On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C.  During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.  The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.  Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

*Evidence of JAMES TATE GRANT's Involvement in the Assault on the U.S. Capitol*

Following the assault on the Capitol, the FBI identified a number of unknown individuals who had allegedly assaulted federal officers.  In particular, the FBI received a publicly available Instagram video through its tip line that showed several rioters confronting at least five USCP officers who were standing behind metal barricades with "AREA CLOSED" signs.  The officers and barriers were positioned along the Pennsylvania Avenue walkway preventing access to the West Front of the Capitol Building.  One of those individuals was listed on the FBI's website as UNSUB AFO #50.  The FBI received multiple tips related to the possible identity of UNSUB AFO #50.[1]  There was one match, however, that identified UNSUB AFO #50 as JAMES TATE GRANT.  As discussed below, the FBI subsequently identified UNSUB AFO #50 as JAMES TATE GRANT ("GRANT").

The Instagram video described above shows that on January 6, 2021, at or about 12:45 p.m., as preparations for the proceedings discussed above were underway in the House and Senate, a large crowd gathered to the west of the U.S. Capitol around the Peace Monument, located in the Pennsylvania Avenue, NW and 1st Street, NW and  1st Street roundabout.   This location is commonly referred to as "Peace Circle" by USCP officers.



*Figure 1. Aerial Imagery of U.S. Capitol Grounds.*

---

[1] The multiple tips identified several individuals by name.  Law enforcement investigated these individuals and confirmed they were not UNSUB AFO #50.

The same Instagram video shows the crowd moving southeast to the threshold of the sidewalk that connects Peace Circle to the U.S. Capitol Building, commonly referred to as the "Pennsylvania Ave Walkway" by USCP officers. Metal barricades had been put in place by USCP officers. The metal barricades were intended to keep the public away from the Capitol building and the Congressional proceedings underway inside.

At approximately 12:50 p.m., GRANT (circled in red in the screenshot below) and another individual, subsequently identified as Ryan Samsel,[2] are observed leading the crowd past the fence line. GRANT and the other individual approach a second line of barricades that were manned by uniform USCP officers. The second line of barricades were constructed of metal bike rack barriers, physically linked end to end, and reinforced with dark colored plastic mesh safety fencing affixed behind the metal bike racks. The fence line was clearly marked with large white "AREA CLOSED" signs with red bold lettering affixed to the fencing.



*Figure 2 – GRANT leading crowd towards barricades blocking access to Pennsylvania Walkway*

---

[2] The United States charged Ryan Samsel via complaint on or about January 29, 2021 in connection with his conduct at the Capitol on January 6, 2021. *See United States v. Samsel*, 21-mj-188 (D.D.C. Jan. 29, 2021). On or about August 25, 2021, a grand jury returned an indictment against Samsel charging him with violations of 18 U.S.C. §§ 231(a)(3); 111(a)(1) and (b); 1752(a)(4), (b)(1)(A), and (b)(1)(B); 1512(c)(2); and 40 U.S.C. §5104(e)(2)(F). *See United States v. Samsel*, 21-cr-537 (TJK) (D.D.C. Aug. 25, 2021).



*Figure 3*

GRANT is observed in the same video standing up against a metal barricade gesturing towards a USCP officer directly in front of him.  GRANT is wearing a black and light gray baseball cap, a black jacket with a black hood, a black and white mask covering the lower portion of his face, black pants, black sneakers with white soles, and black gloves.  A screenshot from the video is shown below.  GRANT is circled in red.



*Figure 4 – GRANT confronting USCP officers*

Next, the video captures GRANT yelling at a second USCP officer and then, with other rioters, GRANT lifts up the metal barricade and shoves it forward into the USCP officers pushing the officers back from their positions and causing at least one officer to fall to the ground into the steps behind her.  One of the rioters jumps over the barricade and attacks two of the USCP officers.  As the officers attempt to apprehend the attacking rioter, GRANT interfered with their attempts to apprehend the rioter by pulling the  rioter back away from the officers.  A third officer comes to

the aid of the two apprehending officers and punches GRANT.  GRANT then gets up and attempts
to step over the fallen barricade towards the officers.  The officers make a brief attempt to lift the
barricade back up, but the rioters, including GRANT, overwhelm the officers and move forward
towards the Capitol Building, forcing the officers to retreat from their position.  Screenshots from
the video are shown below.  GRANT is circled in red.



*Figure 5 – GRANT lifting and pushing barricade into USCP officers*



*Figure 6 – GRANT interfering with officer attempting to apprehend attacker*



*Figure 7*

Law enforcement obtained an additional video from YouTube that shows the same altercation, but from a different angle. That video also depicts GRANT's altercation with the USCP officers, but also shows GRANT walking towards the Capitol Building after the altercation with his hat off and his face mask lowered. Screenshots from that video are shown below. GRANT is circled in red.



*Figure 8*



*Figure 9*



*Figure 10*



*Figure 11 – GRANT walking towards Capitol without mask*



*Figure 12*

Law enforcement reviewed several photos of GRANT that were publicly available on the Internet that depict GRANT participating in the events at the Capitol Building on January 6, 2021. Several of the photos provided law enforcement with a clearer image of GRANT's hat, which contained the logo in the shape of the state of North Carolina with the writing "Drink Local." Two of the photos are shown below.



*Figure 13*



*Figure 14*

Your affiant obtained the driver's license photo for GRANT on file with the North Carolina Division of Motor Vehicles ("DMV").  Your affiant compared GRANT's North Carolina DMV photo with the images of UNSUB AFO #50 depicted above, and both appeared to be the same person.

Your affiant obtained security video from the Capitol's closed-circuit video ("CCV").  The CCV footage shows GRANT entering the Capitol Building through a broken window next to the Senate Wing Door at approximately 2:49 p.m.  He is observed moving through the lobby for several minutes before walking down the hallway towards Senate offices.  He returns from the same hallway several minutes later and exits the Capitol Building through the Senate Wing Door. Screenshots from the CCV are shown below.  GRANT is circled in red.



*Figure 15 – GRANT entering Capitol through window near Senate Wing Door*



*Figure 16*



*Figure 17*



*Figure 18 – GRANT exiting the Capitol through the Senate Wing Door*

During the course of this investigation, your affiant also obtained an additional video taken from inside the Capitol Building on January 6, 2021, that shows GRANT inside of Senate offices S140 and S145.  Screenshots from that video are shown below.  GRANT is circled in red.



*Figures 19 and 20 – GRANT in S145*



*Figure 21 – GRANT in S140*

On or about May 18, 2021, U.S. Magistrate Judge G. Michael Harvey authorized a search warrant to Verizon, the cellular carrier associated with GRANT's cell phone number. Although the records received pursuant to the search warrant requested location data, none was provided by Verizon for January 6, 2021. However, records associated with GRANT's phone number show contact with a phone number ending in 9935 on January 6, 2021. Law enforcement determined that the user of the phone number ending in 9935 is Gary Edwards ("Edwards"). Edwards is depicted in the photo directly above wearing the black jacket and red, white, and blue wool cap, and standing next to GRANT in Senate office S140. Edwards was charged by complaint and arrested by the FBI Philadelphia Division on May 4, 2021 for being inside the U.S. Capitol on January 6, 2021. *See United States v. Gary Edwards*, 1:21-cr-366 (JEB).

12

Pursuant to a court-authorized search warrant, Edwards' cell phone was searched following his arrest. Edwards' phone contained the image shown below of GRANT inside of Senate office S140. The data associated with the image indicates that the image was modified on January 6, 2021, at approximately 3:06 p.m., which suggests this is the time the photo was taken.



*Figure 22*

Based on the aforementioned evidence, there is probable cause to believe JAMES TATE GRANT was present on U.S. Capitol grounds, entered the Capitol building, and committed related offenses, including the assault on USCP officers outside the Capitol Building and obstruction of Congressional proceedings at the U.S. Capitol building, located at First Street, NW, Washington, D.C. 20510 on January 6, 2021.

Therefore, your affiant submits that there is probable cause to believe that JAMES TATE GRANT violated 18 U.S.C. § 111(a)(1) and (b), which makes it a crime to use a deadly or dangerous weapon to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in section 1114 of Title 18 while engaged in or on account of the performance of official duties. Persons designated within section 1114 include any person assisting an officer or employee of the United States in the performance of their official duties.

Your affiant submits there is also probable cause to believe that JAMES TATE GRANT violated 18 U.S.C. §§ 231(a)(3) and 2, which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For the purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your affiant submits there is also probable cause to believe that JAMES TATE GRANT violated 18 U.S.C. § 1512(c)(2), which makes it a crime to obstruct, influence, or impede any official proceeding, or attempt to do so.  Under 18 U.S.C. § 1515, congressional proceedings are official proceedings.

Your affiant submits that there is probable cause to believe that JAMES TATE GRANT violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Finally, your affiant submits there is probable cause to believe that JAMES TATE GRANT violated 40 U.S.C. § 5104(e)(2)(C), (D), (F), and (G), which makes it a crime to willfully and knowingly (C) with the intent to disrupt the orderly conduct of official business, enter or remain in a room in any of the Capitol Buildings set aside or designated for the use of – (i) either House of Congress or a Member, committee, officer, or employee of Congress, or either House of Congress; or (ii) the Library of Congress; (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (F) engage in an act of physical violence in Capitol Grounds; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

John M. Mocello
Task Force Officer, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 29 day of September 2021.

ROBIN M. MERIWEATHER
U.S. MAGISTRATE JUDGE

14