UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | |
| | : | Case Number 1:21-cr-00537-JMC |
| **JAMES TATE GRANT, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT GRANT'S MOTION TO REQUEST DEFENDANT INSTITUTION RELOCATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully responds that defendant James Tate Grant's motion seeking this Court's recommendation for his relocation to a detention facility within the District of Columbia should be denied. The recommendation the defense seeks is not a request that can be complied with at present. Additionally, even if the request were not impossible, the defendant has failed to provide an adequate basis for the relief he seeks.

The defendant is charged in this case in a superseding indictment, ECF 80, for his role in the January 6, 2021 attack on the United States Capitol. On January 13, 2022, a federal grand jury in the District of Columbia returned a Third Superseding Indictment in the above-captioned case, charging Samsel, Grant, Johnson, Randolph, and Blythe with Obstruction of Law Enforcement During a Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Count One); two felony counts related to Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, Inflicting Bodily Injury, and Aiding and Abetting, in violation of 18 U.S.C. §§ 111(a)(1), (b), and 2 (Counts Two and Three); three felony counts relating to disorderly conduct and violence in a restricted building or grounds with a deadly or dangerous weapon, in

violation of 18 U.S.C. § 1752 (Counts Five–Seven); two misdemeanor counts relating to disorderly conduct and violence in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2) and 18 U.S.C. § 2 (Counts Eight and Nine); and Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count Ten). ECF 80.  Grant was also charged alone in two separate counts: Entering and Remaining in Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C) and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

Defendant Grant had been on pretrial release when the Third Superseding Indictment was returned.  Before and after that superseding indictment was filed, Pretrial Services reported that Grant had violated his release conditions. ECF 73, 85.  The United States moved to revoke Grant's pretrial release, ECF 77, because, in summary, in violation of his release conditions, Grant possessed an AR-15 assault rifle with over 60 rounds of ammunition.  Police discovered the weapon and ammunition while arresting Grant for driving while intoxicated; Grant had also attempted to flee from the arresting officers. ECF 77, 77-1. While on release, Grant also tested positive for the use of amphetamines.  The Honorable Timothy J. Kelly, who was previously assigned to this case, ordered the revocation of Grant's pretrial release,  ECF 86, and remanded him to the custody of the Attorney General or the Attorney General's designated representative.

Grant is now detained at the Northern Neck Regional Jail in Warsaw, Virginia.  Although he concedes that this Court "does not have the power" to order the defendant's relocation, ECF 223:2, counsel for Grant has moved for this Court to recommend Grant's relocation to the District of Columbia and seeks to have Grant placed in the District of Columbia Jail's Correctional Treatment Facility (CTF).  The motion offers no supporting authority for the relief requested, and the only facts offered in support of the motion consist of the statement that "it would aid counsel

and Mr. Grant immensely to have him housed in a facility close to or in Washington, D.C." ECF 223:2.

As this Court is aware, when a person has been arrested and ordered detained by a federal court pending trial, Congress has provided under the Bail Reform Act of 1984 that "the court shall direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility....".  18 U.S.C. § 3142(i)(2).  Moreover, the provisions of 18 U.S.C. § 4086 provide:

> United States Marshals shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress, pending commitment to an institution.

*See also* 28 C.F.R. § 0.111(k)[1]; *United States v. Bingham*, No. 14-CR-20676, 2016 WL 4944138, at *3 (E.D. Mich. Sept. 15, 2016)(finding that Section 4086 governs pretrial detainees' demands for transfer).

Because Congress has conferred authority upon the United States Marshals Service (USMS) to house and transfer pretrial detainees, the defense correctly concedes that there is no authority for an order requiring a defendant's transfer to any particular facility.  The United States acknowledges that this Court may instead make a recommendation to the USMS. *See, e.g., United States v. Stile*, No. 1:11-CR-00185-JAW, 2013 WL 12195872, at *2 (D. Me. Nov. 27, 2013).

---

[1] This regulation states that the Director of the USMS shall direct and supervise all activities of the USMS including "[s]ustention of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence, otherwise released from custody by the court, or returned to the custody of the U.S. Parole Commission or the Bureau of Prisons." 28 C.F.R. § 0.111(k).

Nevertheless, in this instance, the Court should decline to issue such a recommendation.

Courts "are ill equipped to deal with the increasingly urgent problems of prison administration". *Procunier v. Martinez*, 416 U.S. 396, 405 (1974); *Bell v. Wolfish*, 441 U.S. 520, 531 (1979) (quoting *Martinez)*; *Shaw v. Murphy*, 532 U.S. 223, 230 (2001) (quoting *Martinez*). The operation of detention facilities is "peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial". *See Bell*, 441 U.S. at 548. These admonitions apply with equal force in the context of pretrial detention. The decision in *Bell* addressed restrictions placed upon pretrial detainees. Citing *Bell* and *Martinez* when addressing the complaints of pretrial detainees in this district, the Honorable Royce C. Lamberth has explained:

> "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration" and it would "not be wise for [courts] to second-guess the expert administrators on matters on which they are better informed." … As a result, with regard to the everyday administration of pretrial detention facilities, the Court is merely concerned with whether a "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective"; if so, the detention facilities practice does not violate due process and thus should generally not concern the court.

*United States v. Medina*, 628 F.Supp.2d 52, 55 (D.D.C. 2009). In *Medina*, the court did not address the provisions of 18 U.S.C. § 4086. Other decisions, however, have recognized that the statute's "open ended" grant of authority to the USMS:

> favors judicial deference to the USMS regarding the placement of detainees. *Cometa v. Doe*, 2018 WL 11247169, at *1 (M.D. Fla. Aug. 15, 2018). The USMS must evaluate many complexities in determining placement, including "expense, administration, payment, [and] access to the premises," *Saunders v. United States*, 502 F. Supp. 2d 493, 496 (E.D. Va. 2007), as well as whether a facility "ha[s] room to house a prisoner, whether appropriate medical or psychiatric care is available for an inmate's specific needs, whether the inmate must be separated from other inmates in the custody of the Marshal, [and] whether the inmate will have reasonable access to his attorney given his proximity," *United States v. Espinoza-Arevalo*, 2015 WL 9598299, at *5 (W.D. Mo. Dec. 30, 2015). In light of the USMS's broad grant of authority and its important policy interests, district courts have uniformly concluded that determining a detainee's placement is

4

within the sole discretion of the USMS and, where applicable, have refused a detainee's request to be transferred to another facility.

*United States v. Thomas*, No. 3:20-CR-51 (SRU), 2022 WL 2315624, at *4–5 (D. Conn. June 28, 2022). Transportation of a detainee is not without its own costs, security concerns, resource allocation, and logistics, which are independent of housing concerns. Efforts to minimize the need for transportation and changes in housing are appropriate. Deference to the housing and transportation decisions of the USMS is therefore proper. *See also United States v. Flores-Hernandez*, Case No. 17-cr-51-BAH (D.D.C.) (Minute Entry of April 4, 2022).

In *Flores-Hernandez*, a 69 year-old defendant was detained pending trial at the Central Virginia Regional Jail (CVRJ) in Orange, Virginia. *See id*. at ECF 22. Like Northern Neck, legal visitation at CVRJ involved a two hour drive for Flores-Hernandez' attorney. That attorney moved for Flores-Hernandez' relocation to the CTF, explaining that he spoke no English, repeated efforts to secure a video visitation had failed, his placement in quarantine precluded confidential in-person visits, and the quarantine was unlikely to end in the near future. Although the motion seeking the transfer to CTF was filed without opposition, Chief Judge Beryl A. Howell summarily denied the motion "after consultation with the United States Marshals Service."

Significantly, the defense has not alleged that Grant is unable to access counsel or discovery, or that his placement in Northern Neck somehow amounts to unlawful punishment prior to conviction. *See Medina*, 628 F.Supp.2d at 58. The only justification the defense offers is the claim that relocation closer to the District of Columbia would, in some unspecified way, be helpful to counsel. Counsel's desire for his client's placement in a more convenient location may be understandable but does not distinguish this defendant or his attorney from any of the many other defendants designated to a facility outside of Washington, D.C. and does not approach the kind of due process concern that would justify this Court's intervention, even in the form of a

recommendation.

In contrast to the defendant's request, the USMS confronts serious impediments to requests like defendant Grant's for relocation. Before preparation of a response, the defendant's motion was discussed with the USMS, prompting a response from that the United States Marshal for the District of Columbia. The Marshal has advised that it is simply not possible "to house every defendant near their attorneys." Bed space within the District of Columbia Department of Corrections and in facilities for the D.C. metropolitan area is limited. The D.C. Department of Corrections can refuse to accept a detainee that the USMS may wish to house there. When placing detainees, the USMS must address any security concerns for the detainee and other inmates, access to any needed medical and mental health care, administrative requirements, staffing, resources, and expenses, and court schedules, as well as access to counsel. While access to counsel is one of many considerations the USMS must balance, the convenience of counsel is not a compelling or appropriate reason for a transfer or for this Court's intervention, especially when there is no allegation that the defendant has been denied access to counsel.[2]

The USMS does not have the ability to place defendants in the CTF. Such placement occurs according to the classification that the D.C. Department of Corrections assigns to a defendant. The USMS has no role in the classification process, and cannot compel the Department of Corrections to assign any particular classification or to place a defendant within the CTF. According to the Marshal, even court orders have failed to result in classification that would result in CTF placement. This Court should decline to recommend an action the USMS has no means of

---

[2] Distance from a detention facility does not equate to lack of access to counsel. In the *Flores-Hernandez* motion, his defense attorney explained that her client had previously been detained at USP Lewisburg, a three and one half hour drive from her office. According to that motion, the commute "was a small price to pay for reasonable access to the defendant." *Flores-Hernandez*, Case No. 21-cr-17-BAH (ECF 22:2, n.1).

performing.

A recommendation from this Court may not have the force or carry the consequences of an order. Nevertheless, this Court's recommendation is more than an empty gesture, *see* ECF 223:2, otherwise defense counsel would not seek it. Accordingly, this Court should refrain from involvement in the administrative matters of the Executive Branch; absent due process concerns (which the defendant's motion does not raise), the housing and transfer of pretrial detainees do "not concern the court." 628 F.Supp.2d at 55. This Court should similarly refrain from making a recommendation the USMS cannot implement. Congress has placed authority for the placement of federal defendants pending trial with the Attorney General and the USMS, and it is the USMS that is best informed about the available and optimal location for any defendant and the costs and consequences for the transfer of any defendant. To function appropriately, the USMS, in the words of the Marshal, must be able to exercise its informed discretion over housing detainees. All of these considerations support the exercise of judicial restraint, especially when the only reason offered for this Court's intervention is the convenience of counsel.

Accordingly, the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: *s/Karen Rochlin*
Karen Rochlin
Assistant United States Attorney Detailee
DC Bar No. 394447
99 N.E. 4th Street
Miami, Florida 33132
(786) 972-9045
Karen.Rochlin@usdoj.gov

7