UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | 21 Cr. 537 (JMC) |
| v. | : | |
| JAMES TATE GRANT | : | |
| Defendant. | : | |

## **DEFENSE MOTION FOR PRE-TRIAL RELEASE**

## **INTRODUCTION**

Defendant James Tate was originally arrested on a criminal Complaint on October 14, 2021 and charged with several offenses committed during the events of January 6, 2021 at the United States Capitol. He made his initial appearance before Magistrate Harvey (via videoconference) on October 21, 2021, at which time the Government did not ask for his detention and the defendant was released on personal recognizance. See DE 9. On December 7, 2021 the defendant was arrested in Wake County, North Carolina and charged with: (1) Driving While Impaired and (2) and carrying a concealed weapon. The defendant also twice tested positive for the use of amphetamines while on release. On January 18, 2022, Judge Kelly (who was then presiding over this case) revoked the defendant's pretrial release. See DE 86.  For the last approximately fifteen (15) months the defendant has remained in custody; he is currently incarcerated at the Lewisburg Federal Correctional Institute in Pennsylvania, approximately four hours outside of the Washington, D.C. metropolitan area.

For all of the reasons set forth herein, the defense respectfully requests that Mr. Grant be granted pretrial release to the High Intensity Supervision Program (HISP) upon the following conditions: (1) home detention at his parent's home in North Carolina; (2) GPS monitoring; (3) no access to electronic devices (including cellular phones and/or computers) except to

communicate with Pretrial Services or his defense attorney ; (4) daily check in with Pretrial Services; (5) drug treatment and testing; and (6) any other conditions of release that the Court or Pretrial Services deems appropriate. The defendant's father, Harold Grant, who is a former federal probation officer, has agreed to act as the defendant's custodian and as explained in the attached sworn affidavit, will ensure that the defendant complies with any conditions of release set by the Court and report any violations immediately to the appropriate authorities.

The defense believes that the suggested conditions would be sufficient to guarantee the defendant's return to Court and the safety of the community, as required by the Bail Reform Act. In the alternative, the defense also specifically requests that Mr. Grant be given "temporary release" pursuant to the Bail Reform Act, so that he can prepare for the upcoming trial of his case. See 18 U.S.C. Section 3142(i). The Government was advised of the defense intention to file this motion for pretrial release and has indicated that it opposes the request.

**FACTUAL BACKGROUND**

The defendant is charged with a number of offenses resulting from his conduct on January 6, 2021 at the United States Capitol, including assaulting a police officer with a dangerous weapon, obstructing an official proceeding of Congress, disorderly conduct, and remaining in a restricted location. For the purpose of this motion for pretrial release, the defense assumes the validity of the charges. At the time of the defendant's initial appearance, however, the Government did not request detention; it was the defendant's subsequent conduct that caused his revocation. Accordingly, this Motion proposed very restrictive conditions of release specifically tailored to ensure that if released, the defendant will not be a danger to the community and will reasonably assure his return to Court. Undersigned counsel does not believe that these conditions were suggested at the time that the defendant's bond was revoked in

January 2022; thus, this marks the first occasion that this Court has been asked to consider appropriate release conditions.

## LEGAL ANALYSIS

The criminal justice system in the United States operates in favor of the release of persons charged with criminal offenses. "In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Gloster, 969 F.Supp. 92, 96–97 (D.D.C. 1997). The federal bail statute grants this Court the authority to release the defendant upon the "least restrictive" combination of conditions necessary to assure his appearance and the safety of the community. 18 U.S.C. Section 3141(c). In reaching this decision, the Court should consider: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the defendant's personal characteristics; and (4) whether release would pose a danger to the community or risk of flight. The Government must establish the risk of flight component by a preponderance of the evidence and dangerousness by "clear and convincing" evidence. United States v. Karni, 298 F.Supp.2d 129, 131 (D.D.C. 2004).

With respect to the issue of dangerousness, the Government cannot rely upon generalities to satisfy its burden of proof. As Judge Bates recently explained:

> "[t]o justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.' " 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). That requires the government to establish that the defendant poses a continued "articulable threat to an individual or the community" that cannot be sufficiently mitigated by release conditions. Id. (quoting Salerno, 481 U.S. at 751, 107 S.Ct. 2095); see also id. ("[A] defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety."). Furthermore, "[d]etention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness ... [as] otherwise the scope of detention would extend beyond the limits set by Congress." Id. at 1283

United States v. Klein, 533 F. Supp. 3d 1, 8 (D.D.C. 2021).

In this case, the Government's detention memorandum argued that the defendant's violation of release conditions triggered a presumption of pretrial detention pursuant to 18 U.S.C. Section 3148(b)(2) and that no conditions would sufficiently guarantee the safety of the community or reasonably assure the defendant's return to Court. In the motion for revocation, the Government argued that "[t]he Defendant had an opportunity to respect the Government and Court's trust in his release pending trial, but has apparently made the conscious decision to abuse that privilege." DE 77 at p. 9. The defense respectfully disagrees.

The defense acknowledges that the nature and circumstances of the offense charged in this case are serious and that the Government has video evidence that memorializes the defendant's participation.[1]  In this case, however, the defense is proposing conditions that would – in every real sense – prevent him from violating his release conditions and ensure his return to Court. As explained in the attached affidavit, the defendant's father Harold Grant, has agreed to allow his son to live in his family residence under home confinement with GPS location monitoring, to act as custodian, to monitor the defendant's activities, and to report any violation (or attempted violation) of release conditions to the authorities. [2]

The Bail Statue expressly provides that a Court can grant pretrial release to a defendant and order him to:

> remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community.

---

[1] Defendant James Grant does not know his co-defendants and did not coordinate any of the charged conduct with them prior to, or during, the events of January 6, 2021.

[2] The defendant was on pre-trial release for a North Carolina state charge of Driving While Impaired at the time of his arrest in this case and is now also charged with another Driving While Impaired and Weapons offense in state court. Undersigned has communicated with the defendant's North Carolina attorney, who has advised that there are no outstanding warrants for the defendant's arrest as a result of either of these charges.

18 U.S. Code Section 3142(c)(1)(B)(i).

Moreover, the defendant's father candidly acknowledges that he thinks his son was laboring under a drug addiction at the time his release conditions were violated, but that he has noted a significant change in the defendant in the last fifteen months. Harold Grant has sworn in his affidavit submitted to the Court (and will personally affirm at a hearing on this motion for release) that he will: (1) not let outsiders into the home; (2) not allow his son access to electronic devices, except for communications with defense counsel or for other approved matters; (3) not allow the defendant access to illegal drugs (or legal drugs of abuse); (4) personally take his son to drug treatment and counseling if the Court orders such as release condition; and most importantly (5) immediately report any violations of the release conditions.

There is every reason for this Court to credit the defendant's father, who is a retired Probation Officer, and worked for more than twenty years in the United States District Court for the Southern District of New York. Mr. Grant is very familiar with the type of release conditions suggested in this case. In that regard, the defendant's father is not merely a uniquely qualified guardian, but he is also cognizant of the responsibility he will be undertaking. The defense hopes that these lines from Harold Grant's sworn affidavit will resonate with the Court:

> I want the Court to understand that my love for my son will not override my better judgment and my sworn promises. If I swear to your Honor that I will report James if he violates his conditions of release, then that is exactly what I will do, without reservation, without delay, and without any effort to hide from the Court, Pretrial Services, or the Government his conduct. I also understand that if I aid him in any way to violate his release conditions, or commit any other criminal offense, that I could also be potentially prosecuted for my conduct.

Defense Exhibit 1 at p. 2.

Under the release conditions proposed by the defense – and monitored by a court appointed guardian – the defendant will have no opportunity to commit the errors that led to his

5

pretrial release being revoked. But if he does, the conditions proposed by the defense will assure that he returns to jail pending trial. The defendant understands the proposed release conditions and the consequences if they are violated. [3]

**Temporary Release To Prepare For Defense**

As an alternative – and independent - basis for pretrial release - the defense requests that Mr. Blue be "temporarily" released from custody and reside with his family under the same conditions previously suggested, girlfriend, until such time as counsel can represent to the Court that preparations for trial are completed. The bail statute authorizes such release, holding that a:

> judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S. Code Section 3142(i).

In this case, the Government has advised that the quantity of discovery in this case requires the defense to provide a portable hard drive. The materials consist of thousands of hours of video, hundreds of thousands of pages law enforcement reports, photographs, and related matters. Indeed, the discovery with respect to the Capitol Hill cases is so enormous that the Government hired a private contractor to create what is referred to as the "Relativity" data base. The trial of this case is scheduled to commence on October 23, 2023, with earlier pretrial deadlines. Undersigned only recently entered an appearance in this case and has significantly less time than his colleagues to prepare this case.

Moreover, the defendant is incarcerated at FCI Lewisburg, which is more than four hours away from the District of Columbia Metropolitan area. While counsel is prepared to make

---

[3] If the Court grants the motion for release, the defendant's father would also transport him from Lewisburg, Pennsylvania to North Carolina.

appropriate in person visits, the distance to travel and the large amount of time needed to review the totality of discovery with Mr. Grant makes personal visits an impractical, if not impossible, means of effectively reviewing discovery. The Lewisburg prison has the capacity for legal video visits, but the system does not permit counsel to "share" documents on the computer screen so that both counsel and client can simultaneously view them. The defendant personally needs to review (and understand) all of the discovery with his attorney in order to prepare a defense to the charges in this case. That is not merely aspirational, but is obligatory.

## CONCLUSION

For all of these reasons, the defense requests that this motion for pretrial release be granted and the defendant released to HISP with the conditions requested herein and any others that the Court deems necessary.

Respectfully submitted,

*Robert Feitel*

_____
Robert Feitel, Esquire
Law Office of Robert Feitel
1300 Pennsylvania Avenue, N.W.
#190-515
Washington, D.C.  20008
D.C. Bar No. 366673
202-255-6637 (cellular)
RF@RFeitelLaw.com

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was sent via ECF to the Assistant United States Attorneys listed on the case docket and counsel for the co-defendants, this 10th day of April, 2023.

*Robert Feitel*

_____
Robert Feitel