**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case Number 21-cr-537 (JMC)** |
| **JAMES TATE GRANT,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO**
**<u>DEFENDANT'S MOTION FOR PRETRIAL RELEASE</u>**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits that this Court should deny James Tate Grant's Motion for Pretrial Release, ECF No. 256. Grant was previously granted pretrial release in this case after being arrested and charged for, among other conduct, violently assaulting uniformed police officers defending the United States Capitol on January 6, 2021. Less than two months after that arrest, officers found Grant heavily impaired behind the wheel of a car at 5 a.m. in possession of an AR-15 assault rifle, two loaded magazines, army fatigues, and weapons accessories. By that point, Grant had already failed multiple drug tests by testing positive for amphetamines. Judge Kelly revoked Grant's pretrial release shortly afterward and ordered him detained until trial.

Grant now seeks to revisit Judge Kelly's decision to revoke his conditions of release. He asks the Court to reopen prior detention proceedings and return him to his parents' home—to the same place he resided during his last period of pretrial release—with many of the same conditions. Grant fails to provide statutory authority for revisiting the Court's revocation order, and he identifies no new information material to the conclusion that he poses a danger to others.

Grant was a danger to others when he was first arrested for attacking law enforcement

1

officers, rioting inside the U.S. Capitol, and obstructing the country's election process, and Grant's conduct during his prior term of release makes that dangerousness all the more clear now. Drug testing conditions did not keep him from repeatedly using methamphetamines, firearms restrictions did not keep him from possessing an assault rifle, and his father's experience as a pretrial services officer did not keep him from driving while intoxicated in the early hours of the morning with that assault rifle and ammunition in his trunk. He has shown repeatedly that he will not respect the authority of the Court or adhere to the Court's authority. There is no set of conditions that would assure the safety of the community if Grant were released again.

## BACKGROUND[1]

Grant helped lead the initial assault on law enforcement officers defending the Capitol on January 6, 2021, the day Congress met to certify the results of the 2020 presidential election. At 12:45 p.m. that day, Grant, his codefendants, and others led a crowd to confront a small group of heavily outnumbered U.S. Capitol Police Officers. Grant, Samsel, and other rioters raised a metal barricade and drove it into the line of officers. One officer was driven to the ground and suffered a concussion. Another officer was pressed down under the barricade and struggled to avoid being pulled out into the mob. Grant and co-defendant Stephen Randolph then attacked and fought directly with the officers, who were quickly overrun. Grant and his codefendants surged into Capitol grounds and toward the Capitol building. Thousands followed.

Grant's criminal conduct did not end with this assault. He spent the next hour and a half at

---

[1] In consideration of the Court's time, the government refers to its motion to revoke pretrial release, ECF No. 77 at 2–8, for a fuller recitation of the facts underlying the government's charges against Grant.

the Capitol's West Front, undeterred by officers' efforts to control the crowd with dispersal orders, tear gas, flash bangs, and rubber bullets. At 2:49 p.m.—after nearly two hours on the West Plaza area of Capitol grounds where police and rioters clashed violently—Grant entered the Capitol building through a broken window and eventually reached Speaker Nancy Pelosi's office as police inside the building were also overwhelmed and unable to secure the area.

On September 29, 2021, Grant was charged by criminal complaint with violations of 18 U.S.C. § 111(a)(1) and (b) (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon or Inflicting Bodily Injury); 18 U.S.C. §§ 231(a)(2) and 2 (Civil Disorder); 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding); 18 U.S.C. §1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct); 40 U.S.C. § 5104(e)(2)(C) (Entering and Remaining in Certain Rooms); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct), 40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence), and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing) (ECF No. 1). Grant was arrested in North Carolina on October 14, 2021, and on October 15, 2021, he had a first appearance and was released with conditions in the Eastern District of North Carolina (ECF No. 6). In addition to standard release conditions, Grant was required to submit and report to supervision; surrender his passport; not obtain a passport or other travel document; limit his travel; avoid contact with any victim, witness or codefendant; not possess a firearm, destructive device, or other weapon; not use alcohol excessively; submit to testing for prohibited substances at the direction of probation, and participate in therapy and counseling for substance abuse at the direction of Probation. ECF 6 at 4.

On October 21, 2021, Grant appeared in the District of D.C. before Magistrate Judge G. Michael Harvey, who ordered, in part, the following conditions of release:

• Must not violate federal, state, or local law while on release.

• Submit to supervision by and report for supervision to the Eastern District of North Carolina.

• Must not possess a firearm, destructive device, or other weapon.

• Must not use alcohol excessively.

• Submit to testing for prohibited substances if required by the pretrial services office or supervising officer.

• Participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

• Prohibited from operating a motor vehicle while under the influence of alcohol.

Grant was released to the home of his parents in North Carolina. Pretrial Services in the Eastern District of North Carolina monitored Grant and conducted periodic drug testing. Grant failed the majority of drug tests he took while on release, having tested positive for amphetamines on October 21, 2021 and November 30, 2021. ECF No. 73 at 2.

At approximately 5:00 a.m. on December 7, 2021—less than two months after Grant's arrest in this case—an officer from the Garner Police Department responded to a Denny's restaurant in response to a suicide threat. ECF No. 73 at 2. While pulling into the parking lot, the officer observed Grant pulling out of a parking spot in a silver car. Grant put his hands out of the window and attempted to get the officer's attention. The officer approached Grant, who stated, "They probably called on me," and mentioned his involvement in the "January 6th incident." Because Grant appeared intoxicated, the officer initiated a DWI investigation. While being placed under arrest, Grant attempted to flee. He then dropped to the ground and stated something to the effect of "Just kill me now." He then stated, "It's over."

In Grant's car, officers recovered an AR-15 assault rifle, 60 rounds of .223 ammunition, weapon accessories, and combat fatigues. Grant was arrested and transported to a local medical center for an emergency commitment. He was charged with Driving While Impaired, and his case remains pending in Wake County District Court. ECF No. 73.

On December 21, 2021, Pretrial Services filed a status report detailing multiple violations by Grant of his terms of release—his drug use and his criminal conduct on December 7, 2021—and recommended that he be removed from Pretrial Services supervision. ECF No. 73. The government then moved to revoke Grant's pretrial release based on these violations. ECF No. 77. On December 28, 2021, Judge Kelly issued a warrant for Grant's arrest pursuant to 18 U.S.C. § 3148(b), noting his concurrence with the recommendation in the Pretrial Violation Report. Dec. 28, 2021 Minute Order. Grant was arrested on Jan. 6, 2022. ECF No. 197.

On January 18, 2022, Judge Kelly granted the government's motion to revoke Grant's pretrial release. Jan. 18, 2022 Minute Entry; ECF No. 86 (Order memorializing ruling). Specifically, the Court found (1) probable cause to believe that Grant committed a state crime while on release (driving while impaired); (2) by clear and convincing evidence, that Grant also violated conditions that he not possess a firearm and that he not use controlled substances; (3) by a preponderance of the evidence, that there is no condition or set of conditions of release that would reasonably assure Grant would not pose a danger to the safety of any other person or the community; and (4) by a preponderance of the evidence, that Grant is unlikely to abide by any condition or combination of conditions of release. ECF No. 86. The Court noted that it also found its third and fourth conclusions supported by clear and convincing evidence, as required by Section 3148(b)(2).

Grant now seeks to revisit Judge Kelly's decision to revoke his conditions of release. He

asks the Court to reopen prior detention proceedings and return him to his parents' home—to the same place he resided during his last period of pretrial release—with many of the same conditions. Perhaps because his arguments for release are not persuasive, as alternative Grant contends that the Court should permit his release pursuant to 18 U.S.C. § 3142(i), an extraordinary form of relief that Grant fails to justify, for the reasons explained below.

## ARGUMENT

At the outset of the case against him, Grant was given an opportunity to await trial at his parents' home, despite the weight of factors favoring of pretrial detention. In just two months, Grant demonstrated his unwillingness to abide by the Court's conditions of release in a manner that showed his blatant disregard for the judicial system *and* demonstrated the danger he poses to the community and to himself. Nothing has changed since then to indicate Grant is more willing now to abide by the Court's conditions this year than he was last year. To release Grant on essentially the same conditions to his father's home—the same home where he previously flaunted the Court's conditions—would create a real and proven risk of danger to others and to the community. The Court should deny Grant's motion for pretrial release, which should be treated as a motion to reopen under 18 U.S.C. § 3142(f), and his motion for temporary release under 18 U.S.C. § 3142(i).

Grant's first request, to reinstate his pretrial release with modified conditions, should be rejected for several reasons. First, it should be summarily dismissed for its failure to identify or satisfy a statutory basis for revisiting the Court's prior order revoking Grant's pretrial release. Second, if the Court were to determine that the revocation proceedings may be reopened under 18 U.S.C. 3142(f), Grant provides no new information not known at the time of prior proceedings that is material to his dangerousness to the community. Third, even if the Court found that Grant

justified reconsideration of his release conditions, Grant's prior term of pretrial release—
considered alongside the relevant factors under Section 3142—leave little room for doubt that
Grant poses as great a danger to others as he did last year when pretrial release was revoked.

<u>Grant provides no new information justifying reopening detention proceedings</u>

As a threshold matter, Grant fails to provide the correct standard by which the Court should
consider pretrial release at this stage in the case. In his motion, Grant provides the standard for an
initial pretrial detention determination under 18 U.S.C. 3142(c), ECF No. 256 at 3,[2] but that is not
applicable when a defendant seeks to revisit a prior order of pretrial detention. Contrary to Grant's
assertion, he bears the burden of justifying reopening and reversing the conclusion of the prior
detention proceedings, not the government. Namely, when a party challenges a court's prior
decision on pretrial detention, courts look to Section 3142(f), which provides:

> may be reopened, before or after a determination by the judicial officer, at any time
> before trial if the judicial officer finds that information exists that was not known
> to the movant at the time of the hearing and that has a material bearing on the issue
> whether conditions of release that will reasonably assure the appearance of such
> person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). "Courts have interpreted the requirements of this provision strictly." 18
U.S.C. § 3142(f); *United States v. Terrone*, 454 F.Supp.3d 1009, 1017 (D. Nev. 2020).[3]

---

[2] Grant cites 18 U.S.C. 3141(c), a subsection that does not exist, but the government presumes he
intended to cite Section 3142(c), which provides the standard governing an initial detention
determination.

[3] Some courts have held that they lack the authority under the Bail Reform Act to reopen a
revocation hearing. *See United States v. Bararia*, 2013 WL 1907782, at *3 (D. Nev. Mar. 12,
2013), *aff'd,* 2013 WL 1907750 (D. Nev. May 7, 2013) ("[I]t is not appropriate to seek to reopen
the detention hearing under section 3142 after release has been revoked under section 3148."). *Cf.
United States v. Alexander*, No. 1:17-CR-13-7 (WLS), 2018 WL 265578, at *4 (M.D. Ga. Jan. 2,
2018) ("The right to reopen a hearing contained in § 3142(f) is therefore also applicable to § 3148

Information that is only new is insufficient to support reconsideration under Section 3142(f); instead, the new information must also have a material bearing on the factors a court must consider when deciding whether to impose detention. *United States v. Lee*, 451 F. Supp. 3d 1, 6-7 (D.D.C. 2020). Those factors are stated at 18 U.S.C. § 3142(g) and include:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. …

18 U.S.C. § 3142(g)(1)-(4); *see also United States v. Chrestman*, 525 F.Supp.3d 14, 26-27 (D.D.C. 2021) (identifying factors specific to Capitol riot cases).[4]

Applying 18 U.S.C. § 3142(f), Grant identifies no new information material to whether he poses a danger to others. Instead, he states that his father, Harold Grant, a former pretrial services

---

proceedings."). Since the defendant fails to meet the requirements of Section 3142(f), even if that standard governed, his motion would still fail to warrant relief.

[4] The listed considerations in *Chrestman* include (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning, "for example, by obtaining weapons or tactical gear"; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protestors before, during, or after the riot; (5) whether the defendant played a leadership role in the events of January 6, 2021; and (6) the defendant's "words and movements during the riot"—e.g., whether the defendant "remained only on the grounds surrounding the Capitol" or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threatened to injure others." 525 F.Supp.3d at 26-27.

officer, is willing to serve as custodian to Grant with heightened release conditions, which he states is "the first occasion that this Court has been asked to consider appropriate release conditions." ECF No. 256 at 3. But this information is neither new nor material.

First, the fact that Harold Grant was formerly a pretrial services officer and that he could be appointed as a custodian over Grant with heightened conditions is in no way new information, as this information was equally available during the prior detention proceedings. *United States v. Rolenc*, 2021 WL 211253, at *5 (D. Minn. Jan. 21, 2021), *affirmed*, 2022 WL 1561277 (holding that neither a parent's willingness to serve as custodian or the imposition of additional restrictions could constitute "new information" because both were available options to the court during the initial detention hearing). Second, the availability of Grant's father to serve as a custodian with heightened release conditions can hardly be considered material, given that Grant resided with his father in the same home to which he now seeks pretrial release. Grant's father did not prevent Grant from violating the conditions of release and endangering himself or others in 2021, and there is no new information indicating that Grant's father is better equipped to do so now.

Insofar as Grant can reopen revocation proceedings at all, as (then) Judge Ketanji Brown Jackson explained in *Lee*, "the relevant statutory inquiry is *not* the benefits that a defendant's release would bring about (however significant) or the harms that his incarceration would cause (however substantial). Rather, the statute requires the Court to evaluate "*the danger*" that "would be posed *by the person's release.*" *Id.* at 7 (original emphasis); *see also United States v. Padilla*, No. CR 21-214 (JDB), 2023 WL 1964214, at *8 (D.D.C. Feb. 13, 2023) ("[T]he two new developments since the previous detention determination—that Padilla's family has suffered while he has been detained and that Padilla has had no disciplinary infractions while in pretrial custody— do not warrant disturbing the Court's previous decision to detain him. While these considerations

are relevant in the decision to detain, as they pertain to Padilla's personal history and characteristics, they do not "relate in some significant or essential way to the decision.") (quoting United States v. Worrell, 2021 WL 2366934, at *9 (D.D.C. June 9, 2021), appeal dismissed, No. 21-3040, 2021 WL 4765445 (D.C. Cir. Sept. 15, 2021)). Grant's motion may look to the benefits of release for the defendant and the convenience of his counsel, but these concerns are irrelevant to the question of whether to revisit his detention. Because the motion fails to identify new information materially altering the Court's prior determination that he poses a danger to others, he fails to meet the threshold requirement to reopen his detention proceedings under 18 U.S.C. § 3142(f).

       *Grant remains a danger to others*

       Even if the Court were to find that Grant's detention proceedings should be reopened, Grant remains just as much of a danger as he did last year when his pretrial release was revoked. Grant proposes that he should be released again to his parents' home in North Carolina, where he would remain in the custody of his father, Harold Grant, a former pretrial services officer. The Court, however, tried releasing Grant to his parents' home following his arrest in 2021, and he, in turn, violated some if not all of the conditions of pretrial release. Grant failed the majority of drug tests administered by pretrial services and was found less than two months later driving heavily intoxicated, in a state of acute mental distress, with an assault rifle, fatigues, two magazines loaded with ammunition, and other accessories for weapons.

       The conditions Grant proposes are essentially the same conditions from when he violated in December of 2021. Based on the charges and the defendant's history, they would do little to protect the community from a person as willing to disregard the Court's conditions as Grant has proven himself to be. For example, Grant's father states that he "will not let outsiders into the

home" and that he will not allow Grant to access "legal drugs of abuse," proposals which are too nebulous and too difficult to enforce to provide any kind of assurance. *United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) ("Limiting visitors can only work, for example, if the appellee submits the names of potential guests for clearance . . . . the conditions as a whole are flawed in that their success depends largely on the defendant's good faith-or lack of it"). It also begs the question about why Grant's father did not take such precautions before, especially given his presumed experience with defendants like his son.

Consideration of the factors enumerated in Section 3142(g) further clarifies the danger Grant would pose to others if released again. First, the nature and circumstances of the offense charged demonstrates Grant's dangerousness and his flagrant disregard for the law. He stands accused not only of violently assaulting armed and uniformed officers with a metal barricade, but of doing so to obstruct a constitutionally mandated proceeding before Congress. Second, the weight of the evidence against Grant significantly weighs in favor of incarceration. For example, video evidence is unambiguous in showing that Grant was a leading participant in assaulting an outnumbered group of officers with metal barricades and then continuing his attack by engaging in hand-to-hand conduct with the officers.

The third Section 3142(g) factor—history and characteristics of the defendant—weighs decisively against Grant given his conduct during his prior release and his earlier criminal history. The Dec. 7, 2021 arrest was not an aberrance for Grant. Just months prior, on September 4, 2021, Grant was again found intoxicated behind the wheel while carrying a firearm. He was charged with both Driving While Impaired and Carrying a Concealed Gun. Prior to that, Grant was convicted in 2018 of tampering with a vehicle and sentenced to 30 days of incarceration and 12 months of probation.

Finally, courts consider the nature and seriousness of the danger to any person or the community that would be posed by the person's release. While this may be guesswork in other cases where courts must use partially analogous information at their disposal to predict how a person will behave on pretrial release, here the dangers are known. During both of Grant's arrests in 2021, he was able to be apprehended before harming others either by driving while impaired or using the firearms he possessed. Grant has shown that he will possess firearms, drive under the influence, and violate the law as he pleases despite the conditions a Court imposes. Granting him pretrial release would invite those same dangers. But when faced with evidence that a defendant poses an articulable threat, this Court has the power to disable that threat. *See United States v. Neefe*, No. 21-cr-567 (RCL), 2022 WL 703999 at *8 (D.D.C. Mar. 9, 2022).

At bottom, Grant is a danger to others and to himself. We know this because he was granted the opportunity last year for pretrial release, during which he flaunted the conditions the Court imposed and endangered others in the process. Grant fails to satisfy the threshold requirements for a motion to reopen under Section 3142(f), but regardless, the evidence is clear that such a motion must fail because Grant has failed to dispel the clear and convincing evidence of his dangerousness.

*Request for temporary release*

In the alternative to his request for pretrial release, Grant asks for temporary release to prepare for trial under 18 U.S.C. § 3142(i), arguing that such release is necessary because Grant is in pretrial custody at FCI Lewisburg in Pennsylvania, and because FCI Lewisburg does not permit screensharing during attorney-client videoconferencing calls. Grant does not propose an end date for the "temporary" release he requests.

Under Section 3142(i), a court that has ordered a defendant's detention "may, by subsequent order, permit the temporary release of the person, in the custody of a United States

marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary to the preparation of a person's defense or for another compelling reason." 18 U.S.C. § 3142(i). This provision applies in "extraordinary circumstances." *United States v. Rebollo-Andino*, 312 Fed.Appx. 346, 348 (1st Cir. 2009); *United States v. Hill*, No. 3:17-CR-276, 2020 WL 4208936 at *2 (M.D. Pa. July 22, 2020) ("Release under § 3142(i) is intended for 'extraordinary circumstances' which are exceedingly rare") (quoting *Rebollow-Andino*); *United States v. Blue*, No. ELH-19-286, 2020 WL 6044328 at * 4 (D. Md. Oct. 9, 2020) ("courts have invoked § 3142(i) parsimoniously and for truly extraordinary circumstances"). A defendant moving under Section 3142(i) bears the burden of showing that he is entitled to relief. *United States v. Chansely*, 525 F.Supp.3d 151, 160 (D.D.C. 2021); *United States v. Riggins*, 456 F.Supp.3d 138, 149 (D.D.C. 2020).

First, the release Grant seeks under Section 3142(i) does not appear to be temporary. [5] The motion does not link his release from detention to any specific purpose or proceeding other than the October 24 trial date, nor does the motion contain any date by which his supposedly temporary release would end. Insofar as Grant demands release that is either permanent or indefinite, the relief he seeks exceeds what the statute allows.

Second, Grant's justifications for such release are flimsy. Grant states that FCI Lewisburg is prohibitively far from D.C., where his counsel resides, ECF 256 at 6, but it is unclear how release to North Carolina—approximately an hour further from D.C. than FCI Lewisburg—would allow for more in-person attorney-client preparation. More generally, courts have declined to release a

---

[5] In what might be a concession that the release he seeks is intended to be permanent, even in his own motion, Grant places the word "temporarily" in quotation marks. ECF 256 at 6.

defendant determined to be dangerous to the community on the basis that doing so would be more convenient for defense counsel.[6]

Grant also states that temporary release is justified by the assertion that FCI Lewisburg's videoconferencing technology does not permit counsel to screenshare case documents with Grant. ECF No. 256 at 7. First, the government has communicated with legal personnel at FCI Lewisburg, who represented that there is no policy prohibiting screensharing and that the platform allows users to do so, so first attempting to resolve what may be simply a technical issue is a much less drastic remedy. Second and more fundamentally, to the extent that the motion for temporary release relies on the proposition that Grant must personally review each and every item produced in discovery,

---

[6] *United States v. Otunyo*, No. CR 18-251 (BAH), 2020 WL 2065041, at *10 (D.D.C. Apr. 28, 2020) (agreeing that if every pretrial detainee is entitled to temporary release to aid working with counsel, then the exception in Section 3142(i) would swallow all detention orders)(internal citations and quotations omitted); *Krol*, 2022 WL 16948611, at *12 ("Although Krol himself may not be allowed access to electronic devices, his defense counsel has not averred that counsel is barred from bringing electronics into the jail to show Krol the relevant video evidence. The limitation on Krol's access, while inconvenient, does not lead the Court to conclude that release would be *necessary* for Krol to participate in his defense"); *United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *7 (W.D. La. Jan. 18, 2013) (90-minute commute to jail and complexity of case with thousands of documents requiring thousands of hours to review was common to all incarcerated defendants and did not justify release); *Petters*, 2009 WL 205188, at *2 ("While this case may, in fact, be complicated and require Defendant to review hundreds if not thousands of documents and meet with his lawyers for dozens of hours, that fact, standing alone, simply does not justify Defendant's release" and "accepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial. This is clearly an absurd result"); *United States v. Blue,* No. CR ELH-19-286, 2020 WL 6044328, at *7 (D. Md. Oct. 9, 2020), *appeal dismissed*, No. 21-4500, 2021 WL 7569805 (4th Cir. Sept. 23, 2021) (defendant's detention at Northern Neck, a two-and-a-half hour commute from the courthouse, was an inconvenience insufficient to establish necessity required for temporary release under Section 3142(i)).

the motion is incorrect.[7] Regardless, FCI Lewisburg policy provides that Grant may receive a laptop to personally review discovery files, which renders the need for screensharing more a matter of convenience than necessity in reviewing discovery. *See* footnote 6.

Finally, even if Grant's justifications for temporary release were persuasive, and even if he defined the particulars of this proposed temporary release, doing so six months ahead of trial is premature. *United States v. Shipp*, No. 19-CR-29 (NGG), 2020 WL 3642856 at *4 (E.D.N.Y. July

---

[7] *United States v. Celis,* 608 F.3d 818, 840-41 (D.C. Cir. 2010) (rejecting argument that it was necessary to translate all discovery material for represented defendant who was detained and did not speak English); *Carillo v. United States*, 995 F.Supp. 587, 591 (D.V.I. 1998) ("[T]here is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none"); *United States v. Ingram*, No. 3:19CR113-MCR, 2021 WL 4134828, at *3 (N.D. Fla. Sept. 10, 2021) (professional obligations of defense counsel did not mandate that defendant see every item of available discovery material and court was not aware of any such constitutional requirement); *United States v. Thompson*, No. 2:10-CR-200-DBH, 2013 WL 1809659, at *6–7 (D. Me. Apr. 29, 2013) (rejecting argument that defendant needed to personally review discovery in order to enter valid plea because Courts appoint lawyers for defendants in criminal cases so that the lawyers can do the legwork in preparing for trial and give sound advice about whether a defendant should go to trial or plead guilty), *aff'd*, 851 F.3d 129 (1st Cir. 2017); *United States v. Stork*, No. 3:10-CR-132 JD, 2014 WL 1766955, at *7 (N.D. Ind. May 1, 2014) (a defendant represented by counsel does not have a right under either the Constitution or the Federal Rules of Criminal Procedure to be provided with discovery personally) (collecting cases); *United States v. Neff*, No. 3:11-CR-0152-L, 2013 WL 30650, at *6 (N.D. Tex. Jan. 3, 2013) ("Contrary to what Defendant contends, he does not have a constitutional right to a personal laptop to help his attorney prepare his defense. Defendant is represented by counsel, who does not have any limitations on computer access or usage"), *aff'd*, 544 F. App'x 274 (5th Cir. 2013); *cf. United States v. Faulkner*, No. 3:09-CR-249-D(02), 2011 WL 3962513, at *4 (N.D. Tex. Sept. 8, 2011) (denying motion to continue trial because detained but represented defendant had not completed review of digital discovery); *see also United States v. Deering*, 179 F.2d 592, 596 (8th Cir. 1999) (holding district court did not abuse its discretion in failing to permit a defendant the right to personally inspect the government's "open file" and instead permitting his stand-by counsel to do so).

6, 2020) ("courts have uniformly declined to release detainees in the absence of an imminent trial or hearing").[8]

**<u>Conclusion</u>**

For the reasons stated herein, Defendant Grant's motion should be denied.

Respectfully submitted,

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By:      <u>*/s/ Hutton Marshall*</u>
J. Hutton Marshall
Karen Rochlin
Christopher Brunwin
Kyle Mirabelli
Assistant U.S. Attorneys
DC Bar No. 1721890
601 D Street, N.W.
Washington, D.C. 20579
(202) 809-2166
Joseph.hutton.marshall@usdoj.gov

Date: April 24, 2023

---

[8] *See also United States v. Acevedo-Baldera*, No. 3:18-CR-00155 (AWT), 2020 WL 9156933, at *8 (D. Conn. Nov. 23, 2020) (when jury selection was at least seven weeks away, defendant had time to work through challenges of preparing for trial while detained and did not meet his burden of showing release was necessary for effective preparation); *United States v. Gumora*, 454 F.Supp.3d 280, 292 (S.D.N.Y. 2020) (denying temporary release where no hearing or forthcoming proceeding was scheduled that would require preparation involving the defendant); *United States v. Eley*, 20-cr-78-3 (AT), 2020 WL 1689773 at *1 (S.D.N.Y. Apr. 6, 2020) (denying temporary release when trial was nine months away); *United States v. Ray*, No. TDC-19-0215, WL 2020 4053822 at *4 (D. Md. July 20, 2020) (denying temporary release when covid-19 pandemic impacted access to counsel, because trial was five months away).

16