UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JAMES TATE GRANT,<br><br>Defendant. | Civil Action No. 1:21-cr-00537 (2) (JMC) |

## ORDER

The Government alleges that James Tate Grant participated in the events of January 6, 2021, which delayed certification of the 2020 presidential election results, caused significant damage to the U.S. Capitol, and injured multiple on-duty officers. *See generally* ECF 245 (Fourth Superseding Indictment); ECF 257 at 2–3. On September 29, 2021, Grant was charged with violations of 18 U.S.C. § 111(a)(1) and (b) (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon or Inflicting Bodily Injury); 18 U.S.C. §§ 231(a)(3) and 2 (Civil Disorder); 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding); 18 U.S.C. §1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct); 40 U.S.C. § 5104(e)(2)(C) (Entering and Remaining in Certain Rooms); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct), 40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence), and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing).[1] ECF 1-1 at 13–14.

---

[1] The allegations in the Fourth Superseding Indictment, ECF 245, have supplanted Grant's initial charges.

1

Grant was arrested in North Carolina on October 14, 2021. ECF 5. At Grant's initial appearance, Magistrate Judge G. Michael Harvey released Grant to his parents' home in North Carolina and set the conditions of Grant's release: Grant was ordered to submit to supervision by the Probation Office; limit his travel; participate in a drug and alcohol abuse evaluation; not possess a firearm; not use alcohol excessively; submit to drug testing; participate in substance abuse counseling at the direction of pretrial services; and obey all federal, state, and local laws. *See* ECF 9.

Grant did not abide by the terms of his release. Twice he submitted urine samples that tested positive for amphetamines. ECF 73 at 2. And on December 7, 2021, while he was on pretrial release, Grant was arrested and charged with Driving While Impaired. *Id.* Allegedly, Grant was extremely intoxicated and sitting in his car in a Denny's parking lot when he flagged down an officer responding to a call at the restaurant. *Id.* Grant refused to participate in field sobriety tests and briefly attempted to flee before submitting to arrest. *Id.* In the back seat of Grant's car, officers found an AR-15 assault rifle, two loaded magazines, multiple rounds of ammunition, and fatigues clothing. *Id.* Grant was charged with Driving While Impaired and his criminal case remains pending in Wake County District Court. ECF 73.

The Government moved to revoke Grant's pretrial release in light of these violations and Grant's arrest and charges. ECF 77. The Court granted the motion after finding that all four factors under 18 U.S.C. § 3142(g) indicated there was no combination of conditions that could ensure Grant would not pose a danger to the community. Regarding the nature and circumstances of Grant's offense, the Court found that the severity of Grant's conduct on January 6 put him in the highest category of dangerousness among January 6 defendants. Transcript of Motions Hearing at

36 (Jan. 18, 2022).[2] The Court also found that video evidence supported the strength of the evidence against Grant. *Id.* at 36–37. Finally, the Court determined that Grant's criminal history—which included two instances of driving while intoxicated by the time of the hearing—weighed against him and indicated that his release would pose a danger to the community. *Id.* at 37–38. Because Grant had violated his initial conditions of his release by failing two drug tests, possessing firearms, consuming alcohol excessively, and violating state law, the Court also concluded that no other conditions of release could ensure the safety of the community. *Id.* at 39–40.

Against this backdrop, after more than fifteen months of detention, Grant seeks to be released to his parents' home in North Carolina. *See generally* ECF 256. He argues that the safety of the community could be ensured through the combination of (1) home detention in Grant's parents' home in North Carolina; (2) GPS monitoring; (3) restricting Grant's access to electronic devices; (4) daily check in with Pretrial Services; and (5) drug treatment and testing. *Id.* at 1–2. Additionally, Grant's father offered to serve as Grant's custodian. *Id.* at 2.

After careful consideration, the Court must deny Grant's Motion. This Court has already held that "there is no condition or combination of conditions of release that will assure that Defendant will not pose a danger to the safety of any other person or the community." ECF 86 at 1. While Grant has proposed conditions of release that are more stringent than his initial conditions, he has not shown that the current circumstances justify departing from this Court's prior decision in which it found "that defendant is unlikely to abide by any condition or combination of conditions of release." *Id.* Simply put, Grant has not shown that he is likely to abide by any conditions of release, no matter how stringent the conditions.[3]

---

[2] Citations to the motions hearing transcript reference a rough copy of the hearing transcript.
[3] The Government argues that, under 18 U.S.C. § 3142(f), detention decisions can be reconsidered only when a defendant presents new information not known to the movant at the time of their initial detention decision. ECF 257

At the hearing held to discuss this Motion to Release, Grant argued that the current situation is different from the circumstances that existed when Judge Kelly revoked Grant's pretrial release. First, he argued that Grant's father, a former probation officer, could ensure that Grant would abide by the conditions of his release. The Court credits the sincerity of Grant's father and believes that his background would be beneficial if he were assigned the responsibilities of a third-party custodian. The Court does not doubt that Grant's father would promptly notify the Court if there were violations, but still, identifying violations is different from preventing them. Given that Grant's prior transgressions occurred while he was living at his parents' house, the Court is not convinced that Grant would abide by even these stringent conditions.

Grant also suggested that his violations were due in part to his ongoing drug and alcohol abuse. He contended that he detoxed while in detention and his sobriety would mitigate the risk of future violations. Again, the Court credits the sincerity of these statements, and believes that a demonstrated commitment to sobriety could weigh in favor of release. But as stated before, Grant's history of violations prevents the Court from concluding that Grant would abide by his conditions of release and not pose a danger to the community.

In the alternative to pretrial release, Grant asked for "temporary release" so that he could more effectively prepare for trial with his counsel. *Id.* at 6–7. While the Court understands that pretrial detention presents challenges that impair defendants' ability to communicate with their counsel, release for any reason is still contingent upon the safety of the community. And for the reasons stated above, the Court is unable to determine that Grant's release would not risk that

---

at 7–8. Other interpretations of the statute are possible. The statute could reasonably be understood to provide that new information is a sufficient reason to revisit a prior order of pretrial detention, but not a necessary condition. Because the Court finds that it is not necessary to resolve this statutory interpretation question to resolve this Motion, the Court does not opine on it.

safety. Additionally, the Government represented that the facility could accommodate Grant's need to review discovery during remote visits. To the extent that Grant is having difficulty reviewing discovery, he may discuss with the Government what other accommodations are possible.

In short, Grant was released and given the opportunity to be in the community pending trial. Unfortunately, he violated the conditions multiple times over, including by engaging in very dangerous conduct (operating a vehicle and possessing firearms while intoxicated), which resulted in him being arrested and charged for another crime while released awaiting trial in this case. The Court afforded him a hearing and determined that no conditions of release could ensure community safety in light of these very serious charges. There is no reason for the Court to revisit that decision at this stage.

Therefore, the Court hereby

**ORDERS** that Defendant's Motion for Bond on Home Detention and other Conditions of Release, ECF 256, is DENIED.

**SO ORDERED.**

DATE: May 5, 2023

　　　　　　　　　　　　　　　　　　　　　　　　Jia M. Cobb
　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Court Judge