UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | 21 Cr. 537 (JMC) |
| v. | : | |
| JAMES TATE GRANT | : | |
| Defendant. | : | |

### DEFENDANT GRANT'S TRIAL MEMORANDUM RE: INADMISSIBILITY OF UNAUTHENTICATED VIDEOS

### INTRODUCTION

Defendant James Grant, through counsel, respectfully files this Memorandum to alert the Court in advance of the trial, that the Government intends to introduce numerous videos which will be subject to challenge as to their authenticity. In particular, the prosecution has identified more than forty-five (45) "third party" videos recordings (marked as Government Exhibits 301-341; 901-906) that were not created by a witness identified by the Government. While the Government's existing witnesses might be able to authenticate very limited portions of some of the videos – for example, when the witness observed the events depicted – the Government appears to believe that the remaining lengthy portions of such "third party" videos are somehow self-authenticating. There is, however, no legal principle that authorizes the wholesale admission of the videos without a proper foundation and without any proof that the videos were not edited or in some other way manipulated since they were created. [1]

---

[1] The Government did not provide its final set of Exhibits until on or about October 18, 2023, thus necessitating the last-minute nature of this filing. The Government has also identified approximately eleven (11) videos that were captured by the "closed circuit" television system installed at the Capitol. See Gov. Exhibits 201-211. Defendant Grant does not object to the introduction of these videos because their authentication does not appear subject to any principled legal challenge.

1

Even at this pre-trial stage of the proceedings, it is apparent that the Government will have significant problems with the authentication of these videos. Accordingly, this memorandum identifies some of the more obvious potential problems with the approach the Government appears prepared to rely upon.

## LEGAL STANDARD FOR AUTHENTICITY/ADMISSILBITY

The Federal Rules of Evidence contain a straight-forward requirement for the authentication of physical evidence. To authenticate an exhibit, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The proponent must provide sufficient evidence "so that a reasonable juror could find in favor of authenticity or identification." United States v. Jones, 107 F.3d 1147, 1150 n.1 (6th Cir. 1997).

The D.C. Circuit Court of Appeals has specifically held that there are no "self-authenticating" exhibits in a trial. "Ordinarily, **documentary evidence possesses no self-authenticating powers**; unaided by an operable presumption, its reliability is not automatically assumed. The legal requirement obtaining in normal contexts is that its genuineness be shown independently before it is accepted as proof." United States v. Sutton, 426 F.2d 1202, 1206 (D.C. Cir. 1969)(emphasis added). Accord United States v. Blackwell, 694 F.2d 1325, 1329 (D.C. Cir. 1982)("As a general rule, tangible evidence such as photographs must be properly identified or authenticated before being admitted into evidence at trial").

As a corollary principle, the proponent of evidence has the obligation to show that it was not altered or tampered with.

> Where a real or physical object is offered as evidence in a criminal prosecution, an adequate foundation for the admission of that object requires testimony first, that such object is the same object which was involved in the alleged incident, and that the condition of that object is substantially unchanged. . . . . If the object sought to be

introduced into evidence is one impervious to change, the discretion of the trial judge is very broad; on the other hand, where the object is one not readily identifiable, or susceptible to alteration by tampering or contamination, the trial judge's discretion may require a substantially more elaborate foundation.

United States v. Miller, 994 F.2d 441, 443 (8th Cir. 1993). Accord United States v. Jones, 356 F.3d 529, 536 (4th Cir. 2004)(the proponent of evidence satisfies its burden when "there is sufficient proof that the evidence is what it purports to be and has not been altered in any material respect").

In United States v. Rodriguez Fernandez, 833 Fed.Appx. 803 (11th Cir. 2020) the defendant sought to introduce a video in a child pornography case purporting to show him confronting the alleged victim about her activity in downloading pornography. The Court of Appeals granted the Government's motion to preclude the video's introduction, reasoning that:

> Here, Defendant produced no evidence to authenticate the video. Nothing evidenced when the video was originally recorded or what device was used to make the recording. Defendant offered no evidence or witness testimony about the accuracy of the recorded events or about whether the video had been altered.

Rodriguez Fernandez at 806-07.

Under the circumstances presented in this case, the Government would seem to face a nearly insurmountable goal in introducing the majority of the third-party videos marked as exhibits. The following section identifies and analyzes a few of the obvious problems of authentication.

## ANALYSIS

The Court is aware that the Government alleges that defendant Grant and his co-defendants are alleged to have been involved, *inter alia*, in a confrontation with members of the Capitol Police at a location identified as the "Peace Circle." The Court is also undoubtedly aware that in many of the criminal cases arising out of the events of January 6, 202, the accused made

video tapes or "live streamed" their conduct in an around the Capitol. It is notable that in this case the Government has not identified a single video of the events at the Circle that were obtained from any of the defendants charged in this case. Likewise, there are no videos created by the police officers who were personally involved in these events. Rather, the Government has marked for evidence videos created by third persons, whose identities are not known to the defense. Moreover, the Government did not provide any information concerning the manner in which the videos were obtained by the prosecution, the chain of custody for the evidence, and whether any steps were taken to ensure that the videos were not altered from their original form. Thus, the defense had no virtually means to independently investigate the authenticity of the videos and of course, the burden of proof lies with the proponent of the videos.

The Government's proposed video exhibits fall into several general categories. They videos range from lengthy overviews of the events that took place in and around the United States Capitol on January 6, 2021, to very specific video of the events that alleged involve defendant Grant and/or his co-defendants. The following is an analysis of some of these different types of videos.

1. **Examples Of Peace Circle Videos**

Government Exhibit 305 is an approximately ten-minute long video marked "*Farina Video From Peace Circle.*" It begins with a few seconds of video of a group of persons approaching the Peace Circle from the right side of the temporary bicycle rack barrier and then depicts other events at the Capitol. With respect to the events at the Peace Circle, unless the Government has a witness who had the same perspective as the person who created the video, then no one could testify at trial that the video accurately depicts the events it captured. Moreover, the Government has not made any representations that the video was not altered.

Similarly, Government Exhibit 308B is an approximately five-minute long video marked "*Benjamin Reports*," that allegedly depicts a broad panorama of events at the Peace Circle. The video was also taken from the right side of the events and contains several "jumpy" changes of perspective as the camera moves back and forth. The entire video appears to have been taken on the opposite side of the temporary bicycle racks from the police officers. It seems very unlikely that any Government witness – or combination of witnesses - could authenticate the contents of this video because it depicts events that were outside their personal frame of reference or vision. The same objection would pertain to Government Exhibit 309, which is marked as "*Clip From Police Under Attack At U.S. Capitol !!!*" which is a four minute video of unknown origin that depicts the events at the Peace Circle from the left side of the events.

In the final analysis, the Government has the burden to authenticate its evidence and to demonstrate that it was not altered or tampered. That burden cannot be satisfied by conjecture or speculation or resort to the adage that "it looks like what happened."

**2. Overview Videos**

There also appear to be significant problems – both with respect to authentication and relevance – for the Government's "overview" videos. For example, Government Exhibit 301, captioned "Anatomy Of A Riot," is an hour and one minute long video montage of events that take place both inside and outside of the Capitol on January 6, 2021. The video does not identify the source of the content as it shifts from view to view and place to place. The video also depicts matters that do not appear even remotely related to the charges in this case.

Likewise, Exhibit 319 is marked "Clip Captiol [sic] – Washington, D.C. – January 6, 2021" and is thirty (30) second clip of what appears to be unrelated persons milling about on the Capitol grounds. The source of the video is not identified and aside from the problems with

5

authentication, its relevance appears *de minimis*. Similarly, Government Exhibit 339 is captioned "U.S. Exhibit 2" and is a minute long video of unrelated third persons climbing over a small stone wall to approach the Capitol Building. The video contains a banner in the upper right hand corner stating "WYSWYGTV," which might possibly be the creator of the content. These videos appear to suffer the same authentication infirmity and worse, do not appear related to the pending charges in this case. These are just examples of the inherent problems in the Government's attempt to use such overview video evidence. The prosecution has the same obligation to prove authenticity – and relevance - with these overview videos as it does with every other piece of evidence in this case.

## CONCLUSION

In its role as gatekeeper of the admissibility of evidence, this Court should require the Government to prove the authenticity of the contents of the "third party" videos it seeks to introduce into evidence in this case and moreover, some quantum of proof that the evidence has not been altered. Given the current state of the record, it does not appear that the Government can meet its threshold burden of proof.

Respectfully submitted,

*Robert Feitel*

_____
Robert Feitel, Esquire
Law Office of Robert Feitel
1300 Pennsylvania Avenue, N.W.
#190-515
Washington, D.C.  20008
D.C. Bar No. 366673
202-255-6637 (cellular)
RF@RFeitelLaw.com

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was sent via ECF to the Assistant United States Attorneys listed on the case docket and counsel for the co-defendants, this 21st day of October, 2023.

*Robert Feitel*

_____
Robert Feitel